OOLAGAH COAL CO. v. McCALEB et al.

(Circuit Court of Appeals, Eighth Circuit. May 6, 1895.)

No. 551.

1. EQUITY—JURISDICTION—TRESPASS.

Complainant's bill alleged that it held several licenses from the Cherokee Nation to mine and sell coal on certain lands described, and for more

than a year had been mining and selling coal thereunder; that the defendants, under a license issued after complainant's, and, either under a mistake of fact or through fraud on defendants' part, had entered upon the lands, and were mining and shipping coal, and preventing complainant from so doing; that such acts tended to destroy the estate created by the licenses, and were inflicting irreparable injury upon complainant; and that some, if not all, of the defendants were insolvent. *Held*, that equity had jurisdiction to enjoin the defendants from mining coal on the lands, and from preventing the complainant from so doing.

**2.** SAME—MINING RIGHT—LICENSE.

*Held*, further, that equity had jurisdiction to determine the validity of defendants' claim of title, whether the same was founded in mistake or fraud.

Appeal from the United States Court in the Indian Territory.

This was a suit by the Oolagah Coal Company against A. F. McCaleb, Grant Roberts, C. A. Schmoy, and C. D. Evans to restrain the defendants from mining coal on certain lands. The circuit court sustained a demurrer to the bill. Complainant appeals. Reversed.

Thomas A. Sanson, Jr., and S. M. Porter (Oliver P. Ergenbright and Z. T. Walrond, on the brief), for appellant.

H. C. Dooley (J. H. Keith, on the brief), for appellees.

Before CALDWELL, SANBORN, and THAYER, Circuit Judges.

THAYER, Circuit Judge. The appellant, the Oolagah Coal Company (hereafter termed the "Coal Company"), filed a bill against the appellees, A. F. McCaleb, Grant Roberts, C. A. Schmoy, and C. D. Evans, in the United States court in the Indian Territory for the First judicial division and after due service of process the defendants appeared, and filed a general demurrer to the bill on the ground that "the said complaint does not state facts sufficient for a complaint." The demurrer was sustained, and a final decree was thereupon entered, dismissing the bill, whereupon the plaintiff prayed for an appeal, and the same was allowed. The only question, therefore, that arises upon the appeal, is whether the bill of complaint stated a case entitling the plaintiff to equitable relief. The bill averred, in substance and in legal effect, the following facts: That the coal company was a corporation duly created under the laws of the state of Kansas, and that the defendants were residents within the First judicial division of the Indian Territory; that the Cherokee Nation had theretofore lawfully issued five mineral licenses, pursuant to the laws of the Nation, to certain licensees therein named, which licenses conferred on said licensees the exclusive right to mine and sell coal on the various tracts of land described in said licenses; that the several licensees had duly assigned the licenses, in writing, and that by virtue of the several assignments, which were particularly described in the bill of complaint, the coal company had succeeded to all of the rights, privileges, and franchises of said licensees, including the exclusive right to mine and sell coal on the lands described in said licenses, and that for more than a year prior to the filing of the bill the plaintiff company had been actually en-

gaged in so mining and selling coal; that all of the licenses afore-said were assigned by, and that the assignments thereof were ob-tained from, the licensees, by the plaintiff company, in accordance with the laws of the Nation. Copies of said laws, as well as copies of the several licenses and the assignments thereof, were made ex-hibits to the bill. The bill next averred that the defendants, well knowing the aforesaid facts, had unlawfully, by force and arms, entered upon a portion of the lands described in the aforesaid licenses, and were then unlawfully engaged in mining coal thereon and in shipping the same, and were preventing the plaintiff company from so doing, to its great and irreparable injury. The bill also averred that the acts aforesaid tended to destroy the estate created by the licenses in the coal lands in question; that the damage done by such wrongful acts could not be accurately ascertained, and was not susceptible of estimation in money; that some, if not all, of the defendants were insolvent; that at least $5,000 worth of coal had already been wrongfully mined and sold by the defendants; and that for the wrong and injury done and threatened the plaintiff company was without any adequate remedy at law. The bill further stated that a mineral license had been issued by the Cherokee Na-tion to A. F. McCaleb, one of the defendants, on September 13, 1892, which covered the lands in controversy between the parties, but that such license was issued subsequent to the licenses under which the plaintiff company claimed, and that it was either issued under a mistake of fact, or was obtained by said A. F. McCaleb through fraud, and was therefore illegal and void. In view of the premises the bill prayed for an injunction restraining the defendants from further mining coal on the lands in controversy, and from further obstructing the plaintiff company in so doing, and for general relief.

The chief ground on which the defendants below, who are the appellees here, seek to sustain the action of the trial court in sus-taining the demurrer and in dismissing the bill, is that the plaintiff company had a plain, adequate, and complete remedy at law. This view, however, overlooks the important fact disclosed by the rec-ord that the injury complained of by the plaintiff company was not an ordinary trespass upon lands, of temporary duration, but was a continuous trespass, which threatened to destroy the character of the property as a mine, and to render the plaintiff's interest therein utterly valueless. It also overlooks the fact that the bill charged, in substance, that whatever colorable right the defendants had to mine coal on the lands in controversy was derived under a license that had either been issued by mistake, or had been obtained by one of the defendants through fraud. It is now well settled by many adjudications, beginning with the case of Mitchell v. Dors, 6 Ves. 147, that an injunction may be granted to restrain a tres-passer from entering into a mine and removing the minerals there-from. Trespasses of that kind, as well as those which consist in cutting down and removing timber, or in removing buildings or other improvements of a permanent character, standing upon lands, are readily enjoined, because, as has sometimes been said, such acts alter the character of the property, and also tend to destroy

it, and to occasion irreparable loss and damage. Courthope v. Mapplesden, 10 Ves. 290; Scully v. Rose, 61 Md. 408; Erhardt v. Boaro, 113 U. S. 537, 5 Sup. Ct. 565; Jerome v. Ross, 7 Johns. Ch. 315; Hammond v. Winchester, 82 Ala. 470, 2 South. 892; Snyder v. Hopkins, 31 Kan. 557, 3 Pac. 367; Iron Co. v. Reymert, 45 N. Y. 703; Beach, Inj. § 1155; High, Inj. (1st Ed.) § 469. It is also held that, even when the title to the property on which the trespass is committed is in dispute, a court of equity will at least award a temporary injunction against the commission of such acts as tend to permanently alter its character or destroy its value, until the title thereto is determined in an appropriate proceeding inaugurated for that purpose. Clayton v. Shoemaker, 67 Md. 216, 9 Atl. 635; Smith v. Jameson, 91 Mo. 13, 3 S. W. 212; Beach, Inj. § 1140, and cases there cited. We fail to see, therefore, that the plaintiff company was without right to equitable relief, even if it be true, as the defendants contend, that the bill discloses a controversy between the parties as to who has the superior right to mine coal on the lands in question, which can only be appropriately determined by a court of law. If such was the fact, it would nevertheless be competent for a court of equity to restrain the commission of such trespasses as are charged in the bill, which tend to render the property valueless for mining purposes, until the controversy existing between the parties is settled by the proper tribunal. We think, however, that in so far as the bill shows that the right to mine coal is in dispute, and that the defendants are acting under a claim or color of title, it also shows that that controversy is one which is within the jurisdiction of a court of equity. The allegation is that the license from the Cherokee Nation under which the defendants are acting was issued after the issuance of the licenses to the plaintiff's assignors, and that it was either issued under a mistake of fact, or was obtained through fraud. A court of equity is certainly competent to inquire and to decide whether the license in question is void on either of these grounds. From any point of view, we think that the bill stated a case entitling the plaintiff to some measure of equitable relief. It showed that the mines underneath the land were being rapidly exhausted by the alleged trespassers; that some, if not all, of the trespassers were insolvent; that the trespass was not temporary, but continuous; that the plaintiff company had an exclusive right to mine coal on the lands in question; and that, in so far as there was a dispute as to who had the better license, the question at issue was one of equitable cognizance. The trial court therefore erred in sustaining the demurrer and in dismissing the bill. Its decree is accordingly reversed, and the cause is remanded, with directions to overrule the demurrer to the bill of complaint, and to proceed with the trial and determination of the case in a manner not inconsistent with this opinion.